IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

STEVEN J. LEON, individually,             Civil Case No.:_____
and on behalf of all others similarly situated

    Plaintiff,

Versus

BLUE BELL CREAMERIES, INC.

    Defendant

---

## CLASS ACTION COMPLAINT

Plaintiff Steven J. Leon ("Plaintiff"), on behalf of himself and the class set forth below, brings the following Complaint against Defendant Blue Bell Creameries, Inc. ("BLUE BELL").

### PRELIMINARY STATEMENT

1. Plaintiff and the class members bring this lawsuit because Defendant BLUE BELL recalled all of its food products for human consumption from the retail market at various times between March 13, 2015 and April 20, 2015; failed to provide adequate notice of the recalls to the Plaintiff and the retail class member purchasers; and, failed to provide a refund of the purchase price paid by the Plaintiff and the class members for the recalled products.

2. Plaintiff and the class members suffered damage in that they unknowingly paid for BLUE BELL food products that could cause serious, adverse health consequences or death when consumed. Plaintiff seeks damages limited to the amount that he and the class members paid for recalled products. This is not an action for personal injury or bodily harm caused by the ingestion of any BLUE BELL recalled products.

1

3. Plaintiff seeks to recover economic damages for himself and for the members of the class in the form of refunds of all retail purchases of BLUE BELL recalled products. Plaintiff and the class members would never have knowingly purchased a food product for human consumption that subsequently would be recalled, because the recalled product has no economic value to them. In fact, a food product that is recalled is worth less than zero because it is not safe for human consumption and must be discarded.

## THE PARTIES

4. Plaintiff Steven J. Leon resides in Hammond, Louisiana, and is a member of the Class defined below.

5. Defendant BLUE BELL is Delaware corporation, with its principal place of business in Texas. Its registered office and principal business establishment in Louisiana are in Baton Rouge, Louisiana. BLUE BELL does business in the State of Louisiana and several other states throughout the country.

## JURISDICTION AND VENUE

6. This court has original jurisdiction over this case under the Class Action Fairness Act (CAFA), 28 U.S.C. §1332(d)(2). Plaintiff is a citizen of the State of Louisiana, and BLUE BELL is a citizen of a different state. The amount in controversy is this action exceeds $5,000,000 and there are more than 100 members of the putative Class.

7. Venue is proper in the Eastern District of Louisiana, pursuant to 28 U.S.C. §1391. Plaintiff resides in the Eastern District and Defendant regularly conducts business in Louisiana, including in the Eastern District of Louisiana. Further, Plaintiff purchased BLUE BELL recalled products in the Eastern District of Louisiana.

## FACTUAL ALLEGATIONS

8. According to BLUE BELL's website, the company has been in the ice cream business since the early 1900's. Until recently, its products were distributed in approximately 20 states and in several foreign countries.

9. According to several recent news accounts, BLUE BELL has had positive test results in its ice cream products and manufacturing plants for the bacteria known as *Listeria monocytogenes* ("*Listeria*") since 2013. *Listeria* is a bacteria which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. These incidences were not reported to federal agencies or to the general public and BLUE BELL continued to operate and sell its products since 2013.

10. On or about March 13, 2015, BLUE BELL posted an announcement on its website stating that it was recalling a limited amount of frozen snacks produced with a potential *Listeria* problem that one of its machines produced. The announcement contained pictures of: Great Divide Bars (2.75 FL OZ); Pre-wrapped SCOOPS (4.0 FL Oz.); individually packaged Sour Pop Green Apple Bars (2.5 FL OZ); Cotton Candy Bars (2.5 FL OZ); Almond Bars (2.5 FL OZ); Pre-wrapped Vanilla Stick Slices (4.0 FL OZ); 6 pk Cotton Candy Bars (6 – 2.5 FL OZ); 6 pk Sour Pops Green Apple Bars (6 – 2.5 FL OZ); and, 12 pk No Sugar Added Mooo Bars (12 - 2.0 FL OZ). The announcement also stated that BLUE BELL recovered all involved recalled products in stores and in storage, and that the recall in no way included its half-gallon, quarts, pints, cups, three gallon ice cream or the majority of take-home frozen snack novelties produced by BLUE BELL. The announcement did not state that retail purchasers of the recalled products could receive a refund for their purchase of these products.

3

11. On or about March 23, 2015, BLUE BELL posted an announcement on its website stating that it was recalling ten (10) frozen snack items because they have the potential to be contaminated with *Listeria*. The announcement stated that the Federal Food and Drug Administration ("FDA") had found *Listeria* in samples of BLUE BELL Chocolate Chip Country Cookies (5.25 FL OZ) (UPC #71899-21169), Great Divide Bars (2.75 FL OZ) (UPC # 71899-21178) and individually packaged SCOOPS (4.0 FL OZ) (UPC # 71899-00701). Seven (7) other products made on the same BLUE BELL production line were also recalled: individually packaged Sour Pop Green Apple Bars (2.5 FL OZ) (UPC # 71899-21208); Cotton Candy Bars (2.5 FL OZ) (UPC #71899-21207); Almond Bars (2.5 FL OZ) (UPC # 71899-21138); Vanilla Stick Slices (4.0 FL OZ) (SKU #964); 6 pk Cotton Candy Bars (6 – 2.5 FL OZ) (UPC # 71899-62257); 6 pk Sour Pop Green Apple Bars (6 – 2.5 FL OZ) (UPC # 71899-62258); and, 12 pk NSA Mooo Bars (12 - 2.0 FL OZ) (UPC # 71899-62305). The announcement stated that the FDA reported that there were three deaths to date associated with the recalled products. The announcement also stated that the recall began as a result of a routine sampling program by the South Carolina Department of Health which revealed the finished product contained Listeria. BLUE BELL stated that these products were immediately removed from all markets in February as a precaution pending final test results. The results were later verified by the Texas Department of Health and Human Services, and that BLUE BELL ceased all production and distribution of these products. The announcement stated that the recall in no way included its half gallons, quarts, pints, cups, three gallon ice cream or the majority of take-home frozen snack novelties. Finally, BLUE BELL suggested that consumers who have purchased these items are urged to return them to the place of purchase for a full refund; however, BLUE BELL did not offer to refund purchasers of these recalled items directly.

12. On or about March 23, 2015, BLUE BELL posted an announcement on its website stating that it was recalling three ounce (3 oz.) institutional/food service ice cream cups – chocolate (SKU #453), strawberry (SKU #452) and vanilla (SKU #451)(tab lid) because of possible health risks associated with *Listeria*. The announcement noted that on March 22, 2015, the Kansas Department of Health & Environment reported one positive test for *Listeria* on a chocolate institutional/food service cup recovered from a hospital in Wichita, Kansas. The cup was produced in the BLUE BELL Broken Arrow, Okla., plant on April 15, 2014. The cups were not sold thru retail outlets such as convenience stores and supermarkets, but were distributed in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nevada, New Mexico, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia and Wyoming via food service accounts. BLUE BELL stated in the announcement that the recall in no way included BLUE BELL's ice cream half gallons, quarts, pints, three gallons or other 3 oz. cups.

13. On March 27, 2015, Paul Kruse, the CEO and President of BLUE BELL, posted a letter on BLUE BELL's website addressed to BLUE BELL's customers and retail customers. In the letter, Kruse personally apologized for any anxiety and inconvenience caused by the recent recalls of certain BLUE BELL products. The letter stated nothing about offering refunds to customers who had previously purchased the BLUE BELL recalled products.

14. On April 3, 2015, BLUE BELL posted an announcement on its website stating that it was voluntarily suspending operations at its manufacturing facility in Broken Arrow, Oklahoma. BLUE BELL stated that it would thoroughly inspect the facility for any possible problems that may have led to the contamination of some of its ice cream products in the past few weeks. BLUE BELL stated that its other plants continue to operate and supply its products

to retail stores and institutional customers. There was no mention of specific recalled products in this announcement.

15. On April 7, 2015, BLUE BELL posted an announcement on its website stating that it was expanding its recall of products that were produced in the Broken Arrow, Okla., plant to include Banana Pudding Ice Cream pints which tested positive for *Listeria*, and additional products manufactured on the same line. The FDA had notified BLUE BELL that a pint of this ice cream tested positive for *Listeria* and was produced at the plant on February 12, 2015. BLUE BELL expanded its recall to include all products made on that one particular production line, from February 12, 2015 – March 27, 2015. The products being recalled were distributed to retail outlets, including food service accounts, convenience stores and supermarkets in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nevada, New Mexico, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia and Wyoming. The announcement further stated that BLUE BELL began working with retail outlets to remove all products produced in Broken Arrow, Okla., from their service area. These items included: Ice Cream Pints (UPC # 0 71899-05101 5) in flavors Banana Pudding (Code Date: 021217S), Butter Crunch (Code Date: 021917S), Mint Chocolate Chip (Code Date: 022017S), Cookies 'n Cream (Code Dates: 030317S, 030617S), Homemade Vanilla (Code Date: 030417S), Dutch Chocolate (Code Date: 032317S) and Moo-llennium (Code Dates: 032417S, 032517S); Rainbow Sherbet pints (UPC # 0 71899-19990 8) (Code Dates: 021717S, 021817S, 022317S, 030217S); Orange Sherbet quarts (UPC # 0 71889-18992 3) (Code Date: 032617S); Mixed Berry Sherbet quarts (UPC # 0 71889-18992 3) (Code Date: 032717S); 3 ounce Tab Lid Cups (Product # 136) (institutional/food service cup only) of Rainbow Sherbet (Code Dates: 022417S, 022617S, 022717S); Ice Cream Homemade Vanilla

6

half gallons (Gold Rim) (UPC # 0 71899-03720 0) (Code Dates: 030917T, 031017T, 031117T, 031217T, 031617T, 031717T, 031817T); Ice Cream Pistachio Almond half gallons (Brown Rim) (UPC # 0 71899-83548 6) (Code Date: 031317T); and, Ice Cream Homemade Vanilla Light half gallons (UPC # 0 71899-73501 4) (Code Date: 031917T). BLUE BELL further stated in the announcement that on April 4, 2015, it began working with retail outlets to remove all products produced in the Broken Arrow, Okla., plant from their service area. These products are identified with a code date ending in O, P, Q, R, S or T located on the bottom of the carton. At the end of the announcement, BLUE BELL urged consumers who have purchased these items to return them to the place of purchase for a full refund; however, BLUE BELL did not offer to refund consumers directly.

16. On April 20, 2015, BLUE BELL posted an announcement on its website stating that the company voluntarily expanded its recall to include all of its products currently on the market made at all of its facilities because they have the potential to be contaminated with *Listeria*. The products recalled were distributed to retail outlets, including food service accounts, convenience stores and supermarkets in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nevada, New Mexico, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia and Wyoming. The announcement stated that the decision to recall all of its products was the result of findings which revealed that BLUE BELL's Chocolate Chip Cookie Dough Ice Cream half gallons produced on March 17, 2015 and March 27, 2015, contained Listeria. BLUE BELL acknowledged that it had several positive tests for *Listeria* in different places and plants. Finally, the announcement stated that customers who have purchased these items are urged to return them to the place of purchase for a full refund, but BLUE BELL did not offer to refund any purchasers

of these recalled products directly. BLUE BELL CEO and President Paul Kruse also posted a video statement on the BLUE BELL website that same day; however, Mr. Kruse's statement mentioned nothing about refunding consumers for their purchase of the worthless recalled products manufactured and distributed by BLUE BELL.

17. On May 7, 2015, BLUE BELL posted an announcement on its website stating that it had collected approximately eight (8) million gallons of ice cream and ice cream products from retailers, institutions and other outlets in the U.S. and internationally, and that this phase of the product recall was complete. BLUE BELL encouraged people who may still have BLUE BELL products to dispose of them or return them to a local retailer for a refund. BLUE BELL did not offer to refund retail purchasers of the recalled products directly in this announcement. BLUE BELL further announced that its production plants in Brenham, Texas (closed since April 24, 2015), Broken Arrow, Oklahoma (closed since April 3, 2015), and Sylacauga, Alabama (closed since April 24, 2015) were closed and that no ice cream was being produced. BLUE BELL CEO Paul Kruse commented in the announcement that it would be several months before BLUE BELL products will be back in stores.

18. As of May 12, 2015, the "FAQ" section of BLUE BELL's website read as follows, *inter alia*:

> **Q: What should people do if they have Blue Bell products in their home?**
>
> A: Please return the product to the store where you purchased it for a full refund. Or, consumers with questions may call 979-836-7977, Monday through Friday, 8 a.m. to 5 p.m. CST.
>
> **Q: Should people eat old Blue Bell products?**
>
> A: Please don't consume Blue Bell products. Instead, please return the product to the store where you purchased it for a refund.

19. As of April 21, 2015, the Centers for Disease Control and Prevention ("CDC") website reads, *inter alia*:

## Advice to Consumers, Institutions, and Retailers

Multistate Outbreak of Listeriosis Linked to Blue Bell Creameries Products

**CDC recommends that consumers do not eat any <u>Blue Bell brand products</u>, and that institutions and retailers do not serve or sell them.**

- This includes all Blue Bell brand ice cream, frozen yogurt, sherbet, and frozen snacks.
- This advice is particularly important for consumers at higher risk for listeriosis, including pregnant women, adults 65 and older, and people with weakened immune systems.

**Consumers should check their freezers for any Blue Bell brand products and throw them away or return them to the place of purchase, even if some of the product has been eaten and no one has become ill. Institutions and retailers should also carefully check their freezers or inventory for any Blue Bell brand products.**

- When in doubt, throw it out. Place the product in a closed plastic bag in a sealed trash can to prevent other people or animals from eating it.
- These products can have a shelf life of up to 2 years.

20. The March 24, 2015 update on the CDC's website concerning the BLUE BELL case stated that contaminated ice cream products may still be in the freezers of consumers, institutions, and retailers, given that these products can have a shelf life of up to 2 years. CDC recommended that consumers do not eat products that Blue Bell Creameries recalled or removed from the market, and institutions and retailers should not serve or sell them.

21. The April 21, 2015 update on the CDC's website concerning the BLUE BELL case states that a total of ten patients infected with several strains of *Listeria* were reported from four states: Arizona (1), Kansas (5), Oklahoma (1), and Texas (1). Illness onset dates ranged from January 2010 through January 2015. All ten patients were hospitalized. Three deaths were reported from Kansas.

22. Although BLUE BELL has represented that consumers can obtain a refund by returning recalled products to retail stores, as a practical matter this plan is ineffective. Requiring Class Members to physically drive to stores, wait in line, present product or proof of purchase, to seek refunds of purchase prices that are generally less than $5.00, has a chilling effect on Class Members, creates far too many burdens, and is designed to avoid refunding Class Members' purchase prices. Accordingly, BLUE BELL has not implemented an effective refund plan in an effort to retain its profits from the sale of its recalled products.

23. Plaintiff Steven J. Leon has purchased BLUE BELL ice cream products on a regular basis for several years for himself and his family. Prior to the recalls by BLUE BELL of its products as outlined above, Plaintiff had purchased at least two (2) half gallons of BLUE BELL Homemade Vanilla Ice Cream. These BLUE BELL products remained in the possession of Plaintiff at the time of the final recall by BLUE BELL as noted above. Plaintiff immediately discarded the BLUE BELL products in his possession upon learning of the recall through various news outlets and was never informed of any opportunity to obtain a refund for his purchases. Plaintiff has not received a refund for his purchases of these BLUE BELL products.

24. Plaintiff would never have purchased these BLUE BELL products if he had known they would subsequently be subject to recall and become worthless as a food product for human consumption.

25. Plaintiff had previously purchased these BLUE BELL products relying on BLUE BELL's guarantee that they were free from defects and were safe for human consumption, yet he did not get the benefit of that bargain when BLUE BELL subsequently recalled the products and the consuming public was warned by BLUE BELL and the CDC not to consume BLUE BELL products any longer. Because they were a danger to him and his family, they were no longer fit for consumption, and therefore had no monetary or other value to him.

26. Plaintiff was not provided notice that a refund was available for recalled BLUE BELL products through retail outlets.

27. Plaintiff alleges that BLUE BELL provided inadequate notice about a potential refund for its recalled products.

28. As the manufacturer of recalled products meant for human consumption, BLUE BELL is responsible for the economic injury to its consumers caused by its actions. Consumer injury occurs in three ways, when (1) a consumer purchases a BLUE BELL product that is subsequently recalled, (2) BLUE BELL fails to inform the consumer that he/she/it has purchased a recalled BLUE BELL product in a meaningful way, and (3) BLUE BELL fails to refund the cost of the worthless recalled products to the consumers who purchased them.

## CLASS ACTION ALLEGATIONS

29. Plaintiff asserts his claims on behalf of a Class defined as follows:

> All persons and entities domiciled in the State of Louisiana who: (1) purchased any of Blue Bell Creameries, Inc.'s products through a retail outlet prior to announced recalls of those products; (2) was in possession of those recalled products at the time of the applicable announced recall(s); and (3) have not received a refund of the purchase price paid for those recalled products from any source.

30. Plaintiff avers that the Class is so numerous that joinder of all class members is impracticable. Hundreds and likely thousands of BLUE BELL's customers satisfy the definition of the Class.

31. Plaintiff avers that common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a) Whether BLUE BELL's notice of the recalls were adequate to inform consumers that refunds would be made available from source of purchase;

b) Whether BLUE BELL negligently failed to adequately notify class members that they purchased products which were recalled and negligently failed to offer a full refund of the amount for the recalled products;

c) Whether BLUE BELL breached the warranty of merchantability implied at the time of sale in that class members did not receive goods that were beneficial or that had the beneficial characteristics represented, and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold;

d) Whether the class has been damaged and, if so, the appropriate measure of damages;

e) Whether BLUE BELL was unjustly enriched by the conduct described in this Complaint;

f) Whether BLUE BELL breached an express warranty regarding the safety and consumability of its recalled products;

g)  Whether BLUE BELL's recalled products were redhibitorily defective, and if so, whether purchasers are entitled to receive a refund of the purchase price; and,

h)  Whether BLUE BELL implemented an acceptable plan to refund the purchase price of all of its recalled products.

32. Plaintiff's claims are typical of the members of the Class, as demonstrated by, *inter alia*, the following facts: (1) Plaintiff purchased BLUE BELL products prior to the publicized recalls and had BLUE BELL recalled products in his possession at the time of the applicable recalls; and (2) Plaintiff did not receive a refund for his purchase of any of the recalled products.

33. Plaintiff will fairly and adequately protect the interests of the Class, and has retained counsel experienced in complex class action litigation. Plaintiff has no interests which are adverse to those of the Class that he seeks to represent.

34. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. BLUE BELL's conduct described in this Compliant stems from its uniform policy and practice associated with these product recalls and its failure to adequately notify consumers of their refund options, and to provide a direct refund option for consumers if they disposed of the recalled products.

35. Class members do not have an interest in pursuing separate actions against BLUE BELL, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against BLUE BELL by any members of the Class on an individual basis. Class certification

also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning BLUE BELL's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of the class members' claims in a single forum, where many of the class members reside.

## FIRST CLAIM FOR RELIEF
## REDHIBITION AND BREACH OF IMPLIED WARRANTY

36. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

37. Under La.C.C. art. 2520, the seller of a product warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives the buyer the right to obtain rescission of the sale.

38. Under La. C.C. art. 2524, the thing sold must be reasonably fit for its ordinary use.

39. Under La. C.C. art. 2545, a seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

40. Plaintiff alleges that all BLUE BELL products involved in the recalls contained redhibitory defects and vices because they were recalled by BLUE BELL and became useless when consumers were instructed not to consume the products. The recalled BLUE BELL products were not reasonably fit for their ordinary use as they were deemed unsafe for human consumption.

41. As a consequence of BLUE BELL being the manufacturer of the recalled products containing redhibitory defects, Plaintiff and the class members are entitled to rescind

the sales of their BLUE BELL recalled product purchases. BLUE BELL is thus liable to Plaintiff and the class members for the return of the purchase price they paid for the recalled products, together with interest from the time of purchase price was paid.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT

42. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

43. BLUE BELL has been unjustly enriched as a result of the conduct described in the Complaint and other inequitable conduct. Substantial benefits have been conferred on BLUE BELL by Plaintiff and the Class, and BLUE BELL has knowingly and willingly accepted these benefits.

43. BLUE BELL either knew or should have known that the payments rendered by Plaintiff and the class members were given with the expectation that the products would be free from harmful and deadly bacteria as represented and warranted. For BLUE BELL to retain the benefit of the payments under these circumstances described herein would be inequitable.

44. BLUE BELL's acceptance and retention of these benefits under the circumstances by failing to implement an effective plan to refund Class Members' purchase prices, make it inequitable for BLUE BELL to retain the benefits without payment of the value of the defective recalled products to the Plaintiff and the class members.

45. BLUE BELL, by the negligent conduct complained of herein, has been unjustly enriched in a manner that warrants restitution.

46. Plaintiff and the Class are entitled to recover from BLUE BELL all amounts paid and collected for recalled products. BLUE BELL cannot retain these payments in good conscience.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and the Class, prays for relief and a judgment against the Defendant as follows:

A.  An order that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.  An order designating Plaintiff's counsel as counsel for the class;

C.  An order designating Plaintiff as class representative of the class;

D.  A judgment awarding appropriate relief, including but not limited to restitution, actual damages, statutory damages, punitive damages, and interest;

E.  A judgment awarding reasonable attorneys' fees and costs to the full extent permitted by law; and,

F.  A judgment granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Class demands a trial by jury.

Respectfully submitted,

By: /s/ Scott E. Brady
Philip Bohrer –LSBA #14089
Scott E. Brady – LSBA #24976
BOHRER LAW FIRM, LLC
8712 Jefferson Highway, Suite B
Baton Rouge, LA 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000
phil@bohrerlaw.com
scott@bohrerlaw.com

                                        Stan P. Baudin – LSBA #22937
                                        PENDLEY, BAUDIN & COFFIN
                                        24110 Eden Street
                                        Plaquemine, LA 70764
                                        Telephone: (225) 687-6396
                                        Facsimile: (225) 687-6398
                                        sbaudin@pbclawfirm.com